## MOUNTAIN STATES TEL. & TEL. CO., Inc. v. HINCHCLIFFE.

### No. 4551.

United States Court of Appeals
Tenth Circuit.

May 12, 1953.

Rehearing Denied June 8, 1953.

Bryan G. Johnson, Albuquerque, N. M., and John R. Turnquist, Denver, Colo. (Elmer L. Brock, Jr., Denver, Colo., and E. C. Iden, Albuquerque, N. M., on the brief), for appellant.

Craig Morton, Jr., Norman, Okl. (Edward P. Chase, Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Since approximately July 1, 1950, Hinchcliffe has engaged in the contracting business in Albuquerque, New Mexico. He maintains his business establishment in a combination home and business office located at 306 South Charleston Avenue, Albuquerque, New Mexico, which he com-

pleted in June, 1948. 306 South Charleston Avenue is located in a semi-business area. His principal business is the construction of walls, barbecue pits and like structures. During the months of April, May and June, 1950, he engaged in such business as a member of a partnership. Since July 1, 1950, he has engaged in such business as a sole proprietor. From 1947 to April 1, 1950, he engaged in similar construction work on a labor by the hour basis. In September, 1947, he made an application for a single-party business telephone. When he established his business at 306 South Charleston Avenue he renewed his application for that location. He was not provided with a telephone until November 1, 1950. On that date he was provided with telephone service on a ten-party line. In April, 1952, he was furnished for the first time with a single-party business telephone.

He brought this action against the Mountain States Telephone and Telegraph Company[1] to recover damages for negligent failure to provide him with adequate telephone facilities.

The case was tried to a jury which returned a verdict of $1,000 in favor of Hinchcliffe. Judgement was entered thereon, and the Telephone Company has appealed.

The Telephone Company concedes the evidence was sufficient to support a finding that it negligently failed to furnish proper telephone service. The only question presented is whether there was competent proof establishing a pecuniary loss sufficient to take the question of damages out of the realm of speculation and conjecture.

Hinchcliffe and his employees on many occasions were unable to make necessary business calls because the line was busy. On many occasions when Hinchcliffe and his employees were carrying on business calls, they were rudely interrupted by other telephone patrons on the line. On some occasions these interruptions resulted in prospective customers hanging up and discontinuing business calls. There were instances where such interruptions resulted in prospective customers, who desired the services of Hinchcliffe, taking their business to other contractors. On many occasions employees of Hinchcliffe, who desired to call his business office for directions or for the supplying of needed materials, were unable to reach the business office because the ten-party line was busy and were compelled to wait or to travel from the job location to the business office.

The evidence clearly established that as a result of the failure to furnish proper telephone facilities, Hinchcliffe lost prospective customers, was compelled to employ an increased sales staff and to incur business expenses that would not have been necessary had he been provided with adequate telephone service, and that as a result he suffered inconvenience, annoyance, discomfort and interference with his business operations and substantial financial injury and loss.

It is well established that where a telephone company negligently fails to furnish proper telephone facilities to a person and such failure results in actual pecuniary loss, then such person may recover damages for inconvenience, annoyance, discomfort and business interference without proving specifically the amount of pecuniary loss resulting therefrom.[2]

In its charge to the jury the trial court submitted the issue of damages resulting from inconvenience, annoyance, discomfort and interference with business operations by clear, complete and proper instructions.

The trial court also submitted to the jury the issue of loss of profits, if any, resulting from the failure to furnish proper and adequate telephone facilities. Whether there was any competent evidence to take that is-

1. Hereinafter called the Telephone Company.

2. Critz v. Southern Bell Telephone & Telegraph Co., 178 Miss. 323, 172 So. 510, 173 So. 430; Sommerville v. Chesapeake & Potomac Telephone Co., 49 App.D.C. 3, 258 F. 147, 149–150; Chesapeake & Potomac Tel. Co. v. Clay, 90 U.S.App.D. C. 206, 194 F.2d 888, 890–891; Chesapeake & Potomac Tel. Co. v. Carless, 127 Va. 5, 102 S.E. 569, 23 A.L.R. 943.

sue to the jury is the more difficult question presented on this record. It should be noted, however, that the trial court in submitting that issue carefully instructed the jury that its verdict must be based upon evidence and not upon speculation or conjecture.

In Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 592, we said:

"The general rule is that, where the cause and existence of damages has been established with requisite certainty, recovery will not be denied because such damages are difficult of ascertainment. * * *

"In Straus v. Victor Talking M[ach]. Co., supra, page 802 of 297 F., the court said: 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery.'

* * * * * *

"A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient." [3]

While the damages may not be determined by mere speculation or guess,[4] it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.[5]

However, the plaintiff must establish his damage by the most accurate basis possible under the circumstances. He must produce the best evidence reasonably obtainable.[6]

We turn now to the evidence introduced to establish the amount of damages resulting from loss of profits.

There were times when workmen ran out of materials on the job and, being unable to reach the business office by telephone, were compelled to travel to the business office and back to the job in order to obtain the necessary materials. There were instances where a workman had completed his work on a particular job or could not proceed further until other work was completed and, being unable to reach the business office by telephone, was compelled to travel to it for directions with respect to proceeding with further work on other jobs. There were many times when salesmen, being unable to reach the business office by telephone, had to travel to it to obtain directions with respect to prices and estimates. Because of lack of adequate telephone facilities Hinchcliffe employed additional salesmen and listed their telephone numbers in his advertisements. But Hinchcliffe offered no evidence and no estimate or approximation of the increased costs resulting from such necessitated travel, loss of time and compensation of extra salesmen; and, therefore, in our opinion, did not produce as to those matters the best evidence reasonably available.

3. See, also, Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562–563, 51 S.Ct. 248, 75 L.Ed. 544; Telluride Power Co. v. Williams, 10 Cir., 164 F.2d 685, 688; Matarese v. Moore-McCormack Lines, 2 Cir., 158 F.2d 631, 636, 637, 170 A.L.R. 440; Hedrick v. Perry, 10 Cir., 102 F.2d 802, 807; Indian Territory Illuminating Oil Co. v. Townley, 10 Cir., 81 F.2d 159, 160; Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 592, and cases there cited; Prejean v. Delaware-Louisiana Fur Trapping Co., 5 Cir., 13 F.2d 71, 73.

4. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.

Ct. 248, 75 L.Ed. 544; Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652; Stanolind Oil & Gas Co. v. Kimmel, 10 Cir., 68 F.2d 520, 522.

5. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544.

6. Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 592, and cases there cited; Indian Territory Illuminating Oil Co. v. Townley, 10 Cir., 81 F.2d 159, 160, note 1; Michigan Window Cleaning Co. v. Martino, 6 Cir., 173 F.2d 466, 468; Shannon v. Shaffer Oil & Refining Co., 10 Cir., 51 F.2d 878, 882, 78 A.L.R. 851; Stanolind Oil & Gas Co. v. Kimmel, 10 Cir., 68 F.2d 520, 522.

384

However, the telephone company, neither at the trial below, nor here, challenged the insufficiency of particular evidence. The only question it raised below and here is that the evidence as a whole was insufficient to support a verdict for more than nominal damages. Moreover, we think, when the amount of the verdict is taken into consideration, it is a reasonable inference that the jury did not predicate its verdict of damages on increased business expenses and that it observed the admonition of the court not to indulge in speculation or guess.

Hinchcliffe introduced other evidence in support of his claim of loss of profits, which we think measured up to the requirement that the plaintiff must produce the best evidence reasonably available.

One workman employed by Hinchcliffe testified that because of his inability to obtain instructions over the telephone from the business office during a five-month period, he was compelled to drive twenty-five times a distance of two or three miles to obtain instructions.

From June, 1950, until November, 1950, when Hinchcliffe obtained a phone on the ten-party line, he used the phone of a neighbor and paid the monthly charge made by the telephone company therefor. A schedule of telephone rates was introduced in evidence.

The evidence established that the gross business of the partnership for April, May and June, 1950, was $14,035.07, and that the gross business of Hinchcliffe for the remainder of the year was $28,082.67; for the year 1951 it was $63,245.98, and for the first four months of 1952 it was $24,184.36. It further established that the net profit realized in 1950 was 5.8% of gross; in 1951, 9.29% of gross, and in 1952, 14.12% of gross.

Hinchcliffe testified that he estimated that the contracts obtained after he got his single-party phone in April and in the month of May, 1952, showed almost a 100% increase, as compared with the period when he had only a party line phone.

We are of the opinion that the evidence with respect to loss of profits and the inferences fairly deducible therefrom were sufficient to support an award for loss of profits.

The judgment is therefore affirmed.